The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Jorge L. Rodriguez-Santos, Appeal No. 20-1035. Attorney Gaston Beatty, please introduce yourself for the record and proceed with your argument. Good morning. My name is Jose Gaston Beatty Agnese. I represent Appellant. Good morning. Good morning. Good morning to all judges. Good morning, Judge Helpe. My honor. I just wanted to say I know that all the briefs cover well all the points, both the appellee and appellant. However, there are some items that I think that you need to know. In this case, both the United States and appellant, appellee and appellant presented good theories, one for conviction and one for acquittal. Both were very strong and I want to say that most of the evidence is in agreement as to both sides. As you can see from the record, the appellant agreed with all the, first to start with, the prosecutor stated that he was going to present an expert to show that the car had not been built in Puerto Rico. I immediately told him that he could prepare some type of stipulation because there are no cars built in Puerto Rico whatsoever. Then all the other forensic evidence that was brought, all the experts, I had no objection to any. I didn't make an objection because all of them agreed with the theory of there is an expert that he talks about the shot inside the car that's in agreement with the testimony of appellant. That's from the inside to outside, that is going down just like it was testified by the appellant. Then the others, one that the car was burned using a machine gun, appellant testified that this person brought gasoline and put that on the car and that while he was kneeling and his head was on the saddle of the truck, he could feel the hot and heard something like an explosion. It's when the flamethrower goes and the same... Well Counselor, your theory was that your client was compelled to participate in this carjacking. Correct. Isn't it true that it came down to a matter of credibility between witnesses? Your Honor, that's why I was going on how it was perceived. If you look at the two witnesses, Melissa and Nietzsche, they are the two main witnesses of the government, are the ones that saying that Jorge, appellant, was the person that came out and grabbed the person, the lady, and that he hit her and placed her on the back. That's their testimony. But if you look at Nietzsche, I say Nietzsche because her name is something like Xena. It's a made up name in Puerto Rico. They make up a bunch of names. I don't know. And she said that she could tell that it was Jorge because he had a black mask, but she could tell that it was him. And I'm saying the reason she believes it's him is because they arrived in the blue truck. But now that we have been living for two years using masks, we know that we see people all the time, people that we know that say hi to us and we have no idea who is behind the mask, unless they lowered their mask. And I know I have said hello to people that probably I didn't know because I thought it was another person because people tend to look alike. Well, counsel, go ahead. Go ahead. Go ahead. Isn't that an issue of weight of the evidence of credibility? Because the evidence being cross-examination, but that's what the jury gets. It's the jury's determination. Judge, it would be if it only was limited to what happened down. And when I say down, it's because then they went up to another area. If it's only what happened, they're not there. But there's nobody that knows what happened up there. And the only testimony that they received is that of appellant. Appellant is the person that describes when they got there, what happened, and how the car was burned first, then how the woman, she was shot. And he mentioned, I heard four or five shots, which is in agreement with what the experts say. There were five shots fired. And he says, and then she was burned. And then he was brought back. And before that, he had mentioned the shot that he had seen inside his car. So the only evidence that they have out there is the testimony of Jorge, and that's of appellant. And that's why I'm saying- Five minutes remaining. Five minutes. Counsel, excuse me, counsel, what is the significance of the video footage? But I realize it's not up there, but you have the video footage of the car and the truck leaving the scene. And then it comes back in about 20 minutes, but only the truck comes back. The vehicle does not come back. There is then a, what, there's a bullet hole in the truck that they take it in to be repaired. And your client goes to pick up the truck with the bullet hole in it. What's the significance of all that? What is significant, and it's in agreement with his testimony, is that after they left that place, they went up to where they, to the crime, I'll call that the crime scene where the murder took place. And what he testified is exactly that. He said that took maybe 15, 20 minutes, and then we came back and they took us to this, we went to this garage and they spoke to this person, they were paying him $20. So it's in agreement. And what is important is that after they left, when they came back, 20 some minutes had passed, which is in agreement with his testimony. And it's what the government is saying that happened. Both are equally the same. That's what's important about the video. It confirms his testimony. Okay. Well, to return to Judge Halpy's question, I mean, the jury heard all of this, and although you never requested a duress instruction, my understanding is that in effect, that kind of argument was made. Whatever I did, I was compelled to do it. I was not a willing participant, so I did not have the intent that's required by the statute for both the carjacking and the kidnapping trial. That was not my intent. I was compelled to do it. And so the jury heard all that and rejected it. I don't see how you get a valid insufficiency argument out of that scenario. Yes, Your Honor. Let me say this. First, I did ask Judge Bezosa, when we had a, on an approach to the bench, I mentioned that I was looking at to the duress instruction. And Judge Bezosa, then right there, and with no hesitation, he told me, there's no duress here, counsel, and you know that I don't have to give that instruction. And when Judge Bezosa tells you that he's not going to give you an instruction, you stop. Now, are you saying that that was an off-the-record exchange between the two of you? It's on a sidebar. Off the record? Yes. Okay. Sidebars are off, what do you mean off the record? And sidebars are, yeah, they're not understand that. Like sidebar off the record? Is that common in Judge Bezosa's courtroom? No, I don't want to say that that's common. First, I have tried with Judge Bezosa, maybe one or two cases only. So I cannot say that that's common. But it is common that many times when you go on a sidebar and start, that sometimes not everything is transcribed. And it has happened to me in other cases. As a matter of fact, there's some opinion from this circuit many years ago where I remember one of the judges asking me what had happened, because the sidebar wasn't recorded. So that does happen. Even if that occurred at sidebar, why was there not an objection? Because you could have said, Judge, you just said you will not accept that instruction, but we want to preserve it. That did not happen. It was not preserved and it's not on the record, any preservation of any objection. Am I correct? No, that is correct, Your Honor. But however, the evidence was presented, the jury heard it, and the court should have given the instruction. Even if the government or a police didn't ask for it, it should have been given. It should have been given. The court is the person that is keeping order in his courtroom. It should have been given. I'm sorry, but I believe it should have been. So what you're saying, counsel, is that as a matter of law, when you present any testimony or evidence of duress, Judge Bezoso or any other judge who has a similar situation has to give a duress instruction, even if it's not requested. Am I correct? That's your argument? That's my argument, yes. That's correct, Your Honor. That's time. Thank you, counsel. Thank you. Attorney Gustin Beattie, at this time, if you could mute your audio and your video, and Attorney Gottfried, if you could unmute your audio and video and introduce yourself to begin. Good morning, AUSA, Jonathan Gottfried, on behalf of the government. Good morning. Good morning. May it please the court? Yes. Your Honors, this is a case in which three witnesses testified that the defendant appellant showed up with two accomplices, grabbed the victim, violently pulled her hair, slammed her head against a car mirror, then got into the victim's into the driver's seat and drove away while the victim was forcibly restrained in the back seat. This is also a case in which when the defendant appellant and his two colleagues showed up at the scene, the victim, according to one of the witnesses, Melissa Cartagena, the victim identified those individuals as the ones who had previously beaten her. The victim had shown up at the scene with a busted lip as well as with a bleeding nose. Afterwards, after these three witnesses, here the victim identify defendant appellant and the other two as the one who had previously beaten her. After these three witnesses see the defendant appellant beat the victim and drive away in her car, what we have is the victim's body later discovered partially burnt next to a burnt car. And yes, in addition to that, we have the surveillance video, a surveillance video which shows that defendant appellant's truck and there is no dispute that it's his truck as he acknowledged on cross-examination. We have the defendant appellant's truck and the victim's car travel towards the murder scene consistent with the timing of the murder and 20 minutes later only the defendant's truck returns. In addition to all of that, in addition to three eyewitnesses, in addition to video surveillance, what the government presented was a bullet hole in the defendant's appellant's truck which he acknowledged that he tried to fix the next day. Mr. Gottlieb, the defendant took the witness stand and disputed his involvement in the matter and he testified that he was acting under pressure and duress, compelled to have to engage in these, to participate in these activities. Why shouldn't, well first of all, were you part of what your brother counselor says was a sidebar? Your Honor, I participated in the trial. I do not recall that his suggestion that since duress was obviously a large part of the defense that that jury instruction should have been given even if it meant that it was a sua sponte determination since the court is obligated to properly instruct on the law. Several responses. One is that defendant was allowed to make this argument to the jury so the jury had the opportunity to hear the defense of duress and it rejected it. The idea that... Excuse me, counsel, just to follow up on Judge Thompson's question. I mean, it's not a very satisfactory answer to say that as a factual matter some version of duress was argued but if the jury has no way of understanding how that law is supposed to factor into its decision, what value does that have? I don't see how that really satisfied when you answered Judge Thompson's question. Your Honor, I would submit that it's for the defense to raise the proper jury instructions not for the judge sua sponte to craft a defense for the defense and to decide what jury instructions are best appropriate for the defense. Here, the defense... What's a little bit unusual is that, you know, having been a trial judge, I guess the three of us were, we do the initial jury crafting after seeking input from the attorneys but the court is the ultimate decision maker as to what instructions are given. Yes, Your Honor, but as this argument, the specific instruction for duress was never raised by the defense. I have no recollection of it and there's no record of it. So, to the extent that defense counsel is now arguing that there should have been a duress instruction, it's waived. The idea that the judge should... If the defendant gets on the witness stand and says they put a gun to my head and threatened my life if I didn't go along with this, I mean, that's pretty clear, isn't it? And it would be appropriate in that situation for the defense to raise the defense instruction to the extent that the defense does not raise the duress instruction. The government would submit that is not the court's responsibility to sua sponte include that instruction. Five minutes remaining. Five minutes. Thank you. What we would have is a situation where defense counsel with the benefit of hindsight could look at their defenses and pick apart the court for not including instructions that the defense did not do. That is kind of the basis of our adversarial system that each side should advocate selflessly on its behalf. And in this case, the defendant simply did not request that instruction. Suppose the court had forgotten to charge the beyond a reasonable doubt instruction. Would you be saying the same thing? I think there'd be a question as to the standard of review, but I think with respect to the beyond a reasonable doubt, it's a fundamental part of the criminal justice system. Whereas the duress defense here, again, was a strategic decision on the part of defense counsel as to whether or not he was going to raise it. The other issue is the validity of the defendant's testimony. Would it have made a difference even if there were a duress instruction? And here, I think we have to look at whether or not the jury credited the testimony of the defendant. What we have is frankly an incredible testimony. If I can just read some brief excerpts. Answer. Their intention was to kill me. Question. For no reason at all. Answer. Maybe. Answer. I was a witness because I was there. I was knelt. They made me kneel. Question. For no reason at all. Answer. For no reason at all. The defendant admitted that he told the police a completely different story the day after the attack than he did on the witness stand. And the story that he told the police after the incident did not involve any kidnapping, did not involve a gun to the head, did not involve any duress. None of that was mentioned to the police. That was a story that first came out on the witness stand. And that's not all. The defendant also claims that he was kidnapped in a public place, which doesn't make any sense. He says that the defendants, I'm sorry, that his colleagues decided to take his car, even though they already had a car that had gas and that would have been sufficient. He says that they took him as a witness, as a witness to this crime, thought about killing him, decided not to kill him, and then out of the goodness of their hearts, decided to fix the bullet hole in his car, which they themselves had put in it. So this is your this is your plein air argument. Your point is that even if the instruction had been given, given all of the evidence that you recited, uh, no reasonable jury could have concluded that the defendant was acting under duress. Is that is that the point of your argument? Yes, your honor. Thank you for putting it better than I did. Um, but that is the point that this defendant appellant's testimony was so incredible, was so contradictory in within itself, excluding all of the other evidence in the case, the video evidence and the three eyewitnesses who had no interest in the case who testified different from him, um, that no reasonable jury would have believed the duress defense, even if it had been, even if had been, um, instructed as such. Mr. Galli, I'm a little intrigued about something that you said. I'm a little intrigued about something you said. You said that you didn't know, uh, anything about what the defendant was going to testify until he took the witness stand. No, I'm sorry. Let me clarify, your honor, the statements that he gave to the police after the incident were completely inconsistent with the statements that he provided when he took the witness stand. But I'm saying that's the version that he gave on the witness stand was the first time you had any knowledge that he was going to be claiming duress? That, yeah, yeah, your honor, that was the first time that we had heard that story of events, that he was kidnapped, that a bag had been thrown up, put over his head, that, uh, that a gun had been put to his head. Um, that was not something that he told the police and not something that had come out, um, prior, prior to that. Okay. Mr. Gottfried, let me ask you a question going back to the duress issue. When Judge Bessosa, like any other judge, I'm familiar, uh, gives the jury instructions, he talks about the, you know, he will give the instruction on the offense. And within that instruction, there's going to be a mens rea instruction. For example, in order to be convicted, the defendant must willfully, knowingly, intentionally, etc, etc, participate. Now, given that instruction, which there's no issue that the judge, Judge Bessosa, gave, uh, wouldn't that, uh, even if the judge did not give a duress instruction, wouldn't that be sufficient, uh, because the jury still has to, you know, he, uh, it has to weigh defendant's credibility within that instruction. And it could reject his, you know, that, that, in fact, he had any duress took place and he, in fact, acted willfully, intentionally, knowingly, etc, etc. Am I correct at that? Yes, your honor. Jury instruction number nine of docket, it's a docket number 107, um, with respect to the carjacking indicates that the defendant intended to cause death or serious bodily harm at the time he demanded or took control of the motor vehicle. If the jury had credited the defendant's version of events, that he was simply a hapless participant in this event and, uh, was against his will, dragged along. In fact, he himself, he describes himself as the victim. If the jury had credited, That's time. Now, if I can just finish this sentence. Thank you. You can finish that sentence, but wrap up, please. Yes, your honor. If the jury had credited the defendant's version, then they could not have found him, uh, they couldn't have found that the evidence satisfied that third element with respect to jury instruction number nine. Thank you for your patience. Thank you. Any other questions from the colleagues? No, thank you. All right. We all said, thank you. Thank you, attorney Gottfried and attorney Gaston Beatty at this time, if you could, um, leave the meeting and that concludes argument in this case.